**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

STEVEN SANDERS,             )
                                        )
        Petitioner,          )
                                        )
        v.                    )           **Case No. 11-cv-683-NJR-RJD**
                                        )
JACQUELINE LASHBROOK,  )
                                        )
        Respondent.    )

# <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Petitioner Steven Sanders was convicted of attempted first-degree murder and residential burglary after a bench trial in February 2005 in Marion County, Illinois. He is serving a 45-year sentence in the Illinois Department of Corrections.

On August 10, 2011, Sanders filed this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. On May 22, 2012, Sanders filed a motion to stay the case in order to exhaust his state court remedies (Doc. 26). The Court granted his motion, and the case was stayed (Doc. 29). On June 5, 2017, Sanders filed a status update and an Amended Petition (Docs. 65, 66). The stay was lifted, and Respondent was given a deadline to respond to the amended petition. On August 2, 2017, Respondent Lashbrook filed a Response (Doc. 72). On September 5, 2017, Sanders filed a Traverse (Doc. 78).

Sanders raises four grounds for relief in the Amended Petition:

1. His trial counsel was ineffective for failing to (1) call a forensic or medical expert witness; (2) call police officers to testify; and (3) adequately investigate the case;

2. His post-trial counsel was ineffective for failing to establish trial counsel's ineffectiveness;

3. His conviction rested on perjured testimony; and

4. The prosecution failed to include his prior juvenile adjudication in the charging instrument and failed to prove it to the trier-of fact beyond a reasonable doubt, rendering the extended-term portion of his sentence void under due process principles.

Sanders acknowledges that he intends to abandon the claim of "insufficiency of evidence" (Doc. 65 at 7). He requests an order vacating his conviction and sentence and remanding his case for a new trial (Doc. 78). Alternatively, he argues that the 15-year extended portion of his sentence be vacated (Doc. 65).

Respondent opposes issuance of a writ, arguing that Ground One is procedurally defaulted in part and meritless; Ground Two is procedurally defaulted and meritless; Ground Three is procedurally defaulted and meritless; and Ground Four is untimely and meritless (Doc. 72).

### Relevant Facts

This summary of the facts is derived from the detailed descriptions by the Illinois Appellate Court, Fifth District, in its Rule 23 Orders affirming Sanders's conviction on direct appeal, affirming the denial of his post-conviction petition, affirming the denial of his successive post-conviction petition, and affirming the extended-term sentence. Copies of these Orders are attached to Doc. 72 as Exhibits I, P, X, and LL.[1]

---

[1] The Court used the document, exhibit, and page numbers assigned by the Case Management/Electronic Case Filing ("CM/ECF") system. All exhibits referred to are attached to Doc. 72.

At the bench trial, William Williams, the complainant in the attempted first-degree murder count, testified that during the evening of November 29, 2001, he and Carlotta Tourtillott walked to Melissa Brown's house on Gragg Street in Centralia, Illinois, in order to visit Brown. As they approached the back door of Brown's residence, Williams saw two men whom Williams later identified as Sanders and Jarred Jones. Williams asked whether Brown was home and Sanders replied, "No." Williams and Tourtillott left, walking back towards Williams's house, which was several blocks away. Sanders and Jones also left, walking in the opposite direction.

Several minutes after arriving home, Williams thought he saw Brown's car drive by, and he and Tourtillott walked back over to Brown's house. As they approached, Williams could see lights on in the living room, kitchen, and bedroom. Standing on the porch, Williams saw Jones "ripping stuff out of the refrigerator." Williams and Tourtillott started to leave, but Sanders came out and pointed a gun at Williams. Williams handed Sanders his wallet, and Sanders rifled through it as he held the gun on Williams. When Sanders placed the barrel against Williams's head, Williams panicked and knocked the gun away. The gun discharged, and Williams and Sanders began struggling. When the gun discharged a second time, Williams told Tourtillott to run. As Williams and Sanders continued to struggle, the gun discharged a third time, the bullet striking Williams in the chest and knocking him to the ground. Seconds later, as Williams lay facedown on the ground, he was shot a second time. Williams did not see who shot him, but Sanders was the only one he had seen with a gun. On cross-examination, Williams acknowledged

telling police that while lying on the ground, he saw someone run by him.

Carlotta Tourtillott testified that on November 29, 2001, she and Williams walked to Brown's house so Williams could introduce her to Brown. When they arrived, no lights were on and they saw two men. Tourtillott recognized Sanders, whom she had met before. Williams spoke with Sanders, and then Williams and Tourtillott left. Sanders and the other man also left, walking in the opposite direction. Shortly after arriving back at Williams's house, Williams and Tourtillott saw a car they thought was Brown's drive by, so they walked back to Brown's house. Lights were on in the kitchen. Tourtillott saw Sanders and the other man in the house. Sanders was "ransacking the kitchen and refrigerator." Williams and Tourtillott started to leave, but Sanders emerged and grabbed Williams. Williams and Sanders began struggling and the other man fled. As Williams and Sanders struggled, the gun discharged, and Williams told Tourtillott to run. As she was fleeing, Tourtillott heard three more shots.

Melissa Brown testified that when she arrived home on the evening of November 29, 2001, she found the back door of her home "kicked in" and her refrigerator and a bedroom a "mess." Several items were missing.

Jarred Jones testified pursuant to a plea agreement whereby he pled guilty to residential burglary and was sentenced to 10 years' imprisonment. Jones testified that on the afternoon of November 29, 2001, he and Sanders had discussed breaking into Brown's home and taking marijuana they believed was there. That evening, Melissa Parakis drove Jones and Sanders to Brown's home. Parakis waited in the car as Jones and Sanders

approached the back door of Brown's home. A couple approached the house and asked if anyone was home. Sanders said "No," and the couple left. Jones and Sanders also left but then returned, and Sanders kicked in the back door. As Jones was rummaging through the freezer in the kitchen, he heard a man call out, asking if anyone was in the home. Jones started to flee out the front door, but the way was blocked, so he returned to the back door. Sanders was at the back door, pointing a gun at the man they had seen earlier. The man was unarmed. Jones fled through the back yard and into an alley, where Parakis had parked. As he opened the car door, he heard two gunshots. Sanders arrived shortly thereafter, and the three drove away.

Melissa Parakis testified that on the night of November 29, 2001, she was at Sanders's mother's house when Sanders and Jones arrived and asked for a ride "over to some girl's house." She drove them to an alley behind Brown's house, where the men got out, telling Parakis to wait. Several minutes later, Jones came back and got in the car. Parakis heard three or four gunshots. Sanders soon appeared, and Parakis drove them back to Sanders's mother's house. Once there, Sanders told Parakis that he had a gun and had shot someone, and he thought the man was dead. Parakis testified that she had pled guilty to burglary and received three years' probation in exchange for her testimony.

Sanders elected not to testify. In closing, Sanders's attorney argued that the State failed to prove that Sanders intended to kill Williams.

As previously stated, the court found Sanders guilty on both counts. With regard to the attempted-murder count in particular, the court found the evidence showed that

Sanders intended to shoot Williams in the chest and intended to shoot him in the back, and these findings gave rise to a finding, beyond a reasonable doubt, that Sanders intended to kill Williams.

In March 2005, the court held a sentencing hearing. No evidence, other than the presentence investigation report, was presented. In a statement in allocution, Sanders stated that he had tried to persuade his attorney to present medical records showing that "[Williams] didn't get shot like he testified he got shot," but counsel failed to present those records. According to Sanders, the medical records "showed different angles and everything to what the victim testified to being shot." Sanders insisted that he had not shot Williams in the back while Williams was lying on the ground. He insisted that all of Williams's gunshots were sustained during their struggle for possession of the gun. The court sentenced Sanders to imprisonment for an extended term of 45 years for attempted first-degree murder and a term of 20 years for the residential burglary, with the sentences to run concurrently.

Other facts will be discussed as necessary in the analysis of Sanders's arguments.

## APPEAL AND POST-CONVICTION PETITIONS

The Office of the State Appellate Defender, appointed to represent Sanders on his appeal, filed a Motion to Withdraw asserting the appeal lacked merit (Doc. 72-4 at 1). Sanders responded to the motion and raised the following points on direct appeal:

1. Whether the evidence was sufficient to prove Sanders guilty beyond a reasonable doubt of attempted first-degree murder where the evidence failed to prove that Sanders intended to kill Williams.

2. Whether Sanders was denied the effective assistance of trial counsel where counsel persuaded Sanders to waive his right to a jury trial, persuaded him not to testify, failed to call medical and forensic experts, and failed to object to proceeding without certain witnesses identified by the State.

(Doc. 72-4 at 20-73).

The Appellate Court reviewed the entire record on appeal and found no error or potential grounds for appeal (Doc. 72-6 at 23). As to the claim of insufficiency of the evidence, the Court reviewed the evidence and determined that "there is clearly sufficient evidence from which a rational trier of fact could have inferred that Sanders shot Williams intending to kill him, and any argument to the contrary would fail" (Id. at 29). As to the claim of ineffective assistance of counsel, the Court reviewed each claim and determined (1) the record does not support Sanders's contention that trial attorney Ringel coerced him into waiving his right to a jury trial; (2) the record clearly supports the finding of the trial court that the decision to testify was Sanders's, and the evidence of guilt was so overwhelming Sanders could not show prejudice; (3) Sanders failed to provide any affidavits or testimony of individuals he claims counsel should have called and therefore the Court cannot determine whether counsel was ineffective for having failed to call them; and (4) the failure to call certain witnesses as a matter of trial strategy does not support a claim of ineffective assistance of counsel (Id. at 29-34). The Court granted the State Appellate Defender's motion to withdraw and affirmed the judgment of the circuit court (Id. at 34).

After his conviction was affirmed, Sanders filed a Petition for Leave to Appeal

("PLA"), which raised the points regarding insufficiency of the evidence and ineffective assistance of counsel (Doc. 72-5 at 3). The Supreme Court denied the PLA on May 29, 2008. *People v. Sanders*, No. 106168 (Ill. 2008) (Id. at 49).

In December 2008, Sanders filed a *pro se* post-conviction petition which raised the points of insufficiency of the evidence, conviction based upon perjured testimony, ineffective assistance of trial counsel, and ineffective post-trial counsel (Doc. 72-5 at 52). The trial court denied the petition finding that the claims made by Sanders had already been raised as part of the direct appeal, or were matters that were not raised on direct appeal and therefore barred by the doctrine of *res judicata*/waiver (Doc. 72-6 at 1-3). The trial court noted that Sanders failed to set forth any reason why the allegation that the appointed attorney in the post-trial hearing was ineffective was not raised as part of the direct appeal (Id.).

On appeal, Sanders was appointed a State Appellate Defender to represent him. The State Appellate Defender filed a motion to withdraw as counsel, alleging there was no merit to the appeal (Doc. 72-6 at 6-18). Sanders filed a *pro se* response to the motion to withdraw arguing that there was merit to his appeal because there was insufficient evidence of specific intent to kill, trial counsel was ineffective, post-trial counsel was ineffective, and the conviction was based on perjured testimony (Doc. 72-6 at 38 -54). The Appellate Court examined the response to the motion to withdraw and the entire appeal and found no error or potential grounds for appeal (Doc. 72-7 at 1-5). The Appellate Court noted the insufficiency of evidence claim was barred by the doctrine of *res judicata*

because it was rejected on direct appeal, where the court found, "There is clearly sufficient evidence from which a rational trier of fact could have inferred that Sanders shot Williams intending to kill him ***." *Sanders*, No 5-06-0394, order at 7 (Doc. 72-7 at 3). The Court further noted the perjury claim failed because Sanders failed to attach to his post-conviction petition any materials that would support his claims that Williams testified falsely at trial and Sanders failed to allege the State knew Williams's testimony was false or that there was some lack of diligence on the part of the State (Id. at 4). The Appellate Court noted the ineffective assistance of trial counsel claim was also barred by the doctrine of *res judicata* because the claims were raised and rejected on direct appeal (Id.). Finally, the Appellate Court rejected Sanders's argument of ineffective assistance of post-trial counsel because the Court previously concluded that even if trial counsel's performance had been deficient, Sanders suffered no prejudice because the evidence of his guilt was overwhelming (Id. at 5). The Court noted that because Sanders could not prevail on a claim of ineffective assistance of trial counsel, any claim that post-trial counsel rendered ineffective assistance by failing to present that claim must necessarily fail (Id.). The Appellate Court affirmed the denial of the post-conviction petition (Id.).

Sanders then filed a *pro se* Petition for Leave to Appeal again arguing insufficiency of evidence, conviction was based upon perjured testimony, ineffective assistance of trial counsel, and ineffective assistance of post-trial counsel (Doc. 72-7 at 8). The Supreme Court denied the PLA on November 24, 2010. *People v. Sanders*, No. 111149 (Ill. 2010) (Doc. 72-7 at 46).

Sanders then filed a Motion for Leave to File Successive Post-Conviction Petition (Doc. 72-9), which was denied by the circuit court on December 18, 2012 (Doc. 72-10). The circuit court found that Sanders failed to set forth any new basis to allow a successive petition for post-conviction relief (Id.). Sanders again appealed the denial. Sanders was appointed counsel and, again, counsel sought leave to withdraw because the appeal lacked merit (Doc. 72-10 at 6-30). Sanders responded raising the following arguments in his proposed successive petition: (1) the State failed to disclose to the defense an alleged (and unidentified) ballistic expert's potentially exculpatory analysis of shooting victim Williams's medical records; (2) the attempted first-degree murder conviction was based on victim William's allegedly perjured testimony that the second of his two gunshot wounds was inflicted while he was lying prostrate and helpless on the ground; (3) direct-appeal counsel was constitutionally ineffective for failing to raise certain issues relating to the alleged ballistics expert's alleged analysis of Williams's medical records; (4) the State, at the preliminary hearing in the case, relied on the allegedly false testimony of a police officer who testified that victim Williams had been shot while lying prostrate on the ground, and that the State knew or should have known this testimony was false because it possessed "ballistic evidence" contradicting the testimony; and (5) the circuit court deprived Sanders of "due process" and "equal protection" when, during the first post-conviction proceeding, it stated that he had not provided any support for his claim that his conviction was based on victim Williams's perjured testimony (Id. at 34).

The Appellate Court reviewed the denial of leave to file the successive petition *de*

*novo* and determined (1) Sanders failed to establish cause for his failure to raise the first claim during his first post-conviction proceeding and failed to establish prejudice in regard to the first claim; (2) Sanders's second claim was barred by *res judicata* and the claim was based on pure conjecture; (3) Sanders's third claim was not raised in his initial post-conviction petition and direct-appeal counsel cannot be faulted for not raising a meritless issue that has no factual basis in the record; (4) Sanders failed to establish cause for his failure to raise the fourth claim during his first post-conviction proceeding and failed to set forth any evidence that there exists, or once existed, some kind of potentially exculpatory analysis conducted by a ballistics expert; and (5) Sanders's fifth claim had no place in a post-conviction proceeding and his factual allegations were incorrect (Id. at 35-37). The Appellate Court granted counsel leave to withdraw and affirmed the judgment of the circuit court (Doc. 72-10 at 31-38).

Sanders then filed a *pro se* Petition for Leave to Appeal arguing the State failed to disclose to the defense a potentially exculpatory ballistic expert analysis of shooting victim Williams's medical records and clothing, the State's key witness Williams's testimony of how he was shot was perjury, and post-trial counsel was ineffective (Doc. 72-10 at 40 - 64). The Supreme Court denied the PLA on May 11, 2015. *People v. Sanders*, No. 119048 (Ill. 2015) (Doc. 72-11 at 1).

Sanders also filed a Section 2-1401 Petition for Relief from Judgment arguing his conviction and sentence was void because (1) he was not properly charged in that he was charged by way of information with a preliminary hearing instead of by grand jury

indictment; (2) the State's evidence of bullet trajectory was inadequate; and (3) he was not extended term qualified (Doc. 72-11 at 2-64). The circuit court dismissed the petition (Doc. 72-11 at 67-68). Sanders filed a Motion for Reconsideration (Doc. 72-11 at 69-89). The circuit court denied the motion to reconsider as to the issues regarding bullet trajectory and improper admonishment regarding enhanced sentencing (Doc. 72-12 at 2). The circuit court reconsidered the other issues raised in the motion and denied the remaining issues presented by the Petition for Relief from Judgment (Id. at 3).

Sanders, through counsel, filed an appeal, arguing the extended-term sentence imposed on his conviction for attempted first-degree murder was void (Doc. 72-12 at 4-35). Sanders asserted his prior juvenile adjudication for armed robbery did not qualify as a prior "conviction" and the trial court was not authorized to sentence him to an extended-term sentence (Id.). The Appellate Court reviewed the dismissal *de novo* and affirmed the dismissal of the petition for relief from judgment (Doc. 72-13 at 17-19).

Sanders filed a Petition for Leave to Appeal to the Illinois Supreme Court (Id. at 21-39). The Supreme Court denied the PLA on March 29, 2017. *People v Sanders, No. 121748* (Id. at 40).

### LAW APPLICABLE TO §2254 PETITION

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA. "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court

convictions are given effect to the extent possible under law." *Bell v. Cone*, 122 S.Ct. 1843, 1849 (2002).

Habeas is *not* yet another round of appellate review. 28 U.S.C. §2254(d) restricts habeas relief to cases where the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases." *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012), citing *Williams v. Taylor*, 120 S.Ct. 1495 (2000). A state court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." (Id.). The scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1). *Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003). The unreasonable application standard is "a difficult standard to meet." (Id. at 662). Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion."(Id.) (internal citation omitted).

Respondent concedes that grounds 1-3 were timely filed and that Sanders has exhausted state remedies. Respondent contends, however, that some of Sanders's grounds are procedurally defaulted and that ground 4 was not timely filed.

A habeas petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995). Before seeking habeas relief, a petitioner is required to bring his claims through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728 (1999), *see also* 28 U.S.C. §2254(c). Under the Illinois two-tiered appeals process, a habeas petitioner must fully present his claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review in cases such as this one. (Id. at 843-846).

## ANALYSIS

### Ground One

For his first ground, Sanders argues trial counsel was ineffective for failing to (1) call a forensic or medical expert witness, (2) call police officers to testify, and (3) adequately investigate the case. The first two claims of this ground are procedurally defaulted because they were rejected by the state court on independent and adequate

state grounds.

Sanders argues counsel was ineffective in failing to call medical and forensic experts and police officers as witnesses; the Appellate Court rejected the claim on direct appeal because no affidavit or testimony from the witnesses were tendered. Because Sanders failed to provide any affidavits or testimony from any of the individuals he claims counsel should have called, the Appellate Court could not determine whether counsel was ineffective for having failed to call them and rejected the claim on state procedural grounds. The claim of ineffectiveness for failing to call medical and forensic experts was rejected by the state court on independent and adequate state grounds and therefore is procedurally defaulted.

Sanders's defaulted arguments cannot be considered here unless he demonstrates cause for his default and prejudice, or that failure to consider his arguments will result in a miscarriage of justice. *Perruquet v. Briley*, 390 F.3d 505, 514-515 (7th Cir. 2004). Sanders attempts to show prejudice arguing that but for counsel's ineffectiveness, the outcome of the proceeding would have been different. In order to show that a miscarriage of justice is likely to result, however, he must meet the demanding *Schlup* standard for a claim of actual innocence, which he has not done. *See McQuiggin v. Perkins*, 569 U.S. 383, 392-93 (2013); *Schlup v. Delo*, 513 U.S. 298 (1995). In order to establish actual innocence under *Schlup*, a habeas petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," *Schlup*, 513 U.S. at 324, and the new evidence

must demonstrate that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006). Sanders has not presented any new reliable evidence.

Sanders also argues ineffectiveness in failing to adequately investigate the case. A claim of ineffective assistance of counsel must be analyzed under *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Analysis under *Strickland* and on habeas review under §2254 are both highly deferential. Where, as here, both apply, the review is "doubly" deferential. *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

In order to show ineffective assistance of counsel under *Strickland*, a petitioner must demonstrate (1) that counsel's performance "fell below an objective standard of reasonableness" ("the performance prong"), and (2) "that the deficient performance prejudiced the defense" ("the prejudice prong"). *Strickland*, 104 S.Ct. 2066-2067. In order to be entitled to habeas relief, a petitioner must satisfy *both* prongs of the *Strickland* analysis. There is no mandatory order for the analysis, however, and a habeas court is not required to address both prongs if the petitioner has failed to make a sufficient showing on one. (Id. at 2069).

Sanders criticizes counsel's performance asserting that counsel could not have made the strategic choice not to present the missing witnesses without first conducting a complete investigation regarding the number and trajectory of the bullets fired. This claim was rejected by the trial court and on appeal because Sanders's attorney Ringel did investigate Sanders's contention that the bullet wound in Williams's back could have

been an exit wound, rather than an entry wound. The prosecutor told Ringel that he had doctors ready to testify to rebut any defense regarding either the number of shots fired or the trajectory of the bullets. Additionally, after confirming that the attorney-client privilege was waived for purposes of the claims alleged in the post-trial motion, Ringel testified that Sanders had told him that there had been a shot to the chest that was accidental and a shot to the back that Sanders did not claim was accidental. The Appellate Court determined that in light of this information, Ringel made a reasonable and informed decision not to further pursue evidence to support a theory contesting the number or trajectory of the bullets. The Appellate Court rejected Sanders's argument that further investigation would have uncovered a ballistics or medical expert to refute the State's theory that Williams was shot twice as nothing more than speculation because Sanders never identified particular experts who would give the kind of testimony he seeks. The Appellate Court also concluded that Sanders failed to establish prejudice, given the overwhelming evidence of his guilt.

In rejecting Sanders's claims of ineffective assistance of counsel, the Appellate Court cited to an Illinois Supreme Court case, *People v. Colon*, 225 Ill.2d 125 (2007), which in turn cited *Strickland*, and correctly recited the *Strickland* two-pronged test, noting that *Strickland* requires a showing of both deficient performance by counsel and resulting prejudice. This Court is mindful that "the bar for establishing the unreasonableness of a state court's application of *Strickland* 'is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus.'" *Jones v. Brown*, 756 F.3d 1000, 1007 (7th

Cir. 2014), citing *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). Sanders does not come close to clearing the bar here, and thus he is not entitled to habeas relief on Ground One.

**Ground Two**

For his second ground, Sanders argues that post-trial counsel was ineffective for failing to establish trial counsel's ineffectiveness. Respondent asserts this claim was not presented to the state supreme court on direct appeal and that when it was raised during post-conviction proceedings, it was only presented to the state trial and supreme court. Thus, Respondent argues, it was procedurally defaulted because it was not presented in one complete round of state court proceedings. Respondent further argues the claim is meritless because trial counsel was not ineffective, therefore, post-trial counsel cannot be ineffective with regard to arguing a trial-counsel claim.

The Illinois Appellate Court rejected Sanders's claim regarding post-trial counsel as meritless, reasoning that because Sanders could not prevail on a claim of ineffective assistance of trial counsel, any claim that post-trial counsel rendered ineffective assistance of counsel by failing to present that claim must necessarily fail. To establish the *Strickland* prejudice prong, Sanders must show that there is a reasonable probability that post-trial counsel's failure to raise an issue would have resulted in the reversal of his conviction or an order for a new trial. *See Lee v. Davis*, 328 F.3d 896, 901 (7th Cir.2003). Sanders has failed to establish prejudice and is not entitled to habeas relief on Ground Two.

**Ground Three**

For his third ground, Sanders asserts his conviction rested on perjured testimony.

Respondent argues this claim is procedurally defaulted because (1) the state post-conviction appellate court disposed of it on an independent and adequate state law ground, and (2) Sanders failed to present this issue in one complete round of state court review.

Sanders's claim regarding perjured testimony was rejected by the Appellate Court on the independent and adequate state ground that he did not attach affidavits or other materials to his post-conviction petition to adequately support his allegations as required by state law. This procedural bar is based on a firmly established and regularly followed state practice. Sanders argues the procedural ruling was not an independent basis for the state court's decision because the Appellate Court also addressed the merits of the claim. The Appellate Court addressed the procedural analysis as well as the merits analysis of Sanders's claim and rejected it based on each analysis. The claim was therefore procedurally defaulted on an independent and adequate state law ground.

Procedural default can be overcome by a showing of cause and prejudice. Sanders must establish cause for his default and prejudice, or that failure to consider the claim would likely result in a miscarriage of justice. *Coleman v. Thompson*, 111 S.Ct. 2546, 2565 (1991). Again, Sanders has not made a claim of actual innocence sufficient to overcome his procedural default. *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1931 (2013). Sanders is not entitled to habeas relief on Ground Three.

**Ground Four**

For his fourth ground, Sanders asserts the prosecution failed to include his prior

juvenile adjudication in the charging instrument and failed to prove it to the trier of fact beyond a reasonable doubt, rendering the extended-term portion of his sentence void under due process principles. Respondent argues this claim is time-barred and meritless. Respondent argues Ground 4 was submitted six years after the limitations period had expired and equitable tolling is unwarranted.

Sanders timely filed his first habeas petition on August 10, 2011 (Doc. 1). Ground 4 was added to the claim when the Amended Petition was filed on June 5, 2017 (Doc. 65). The statute of limitations for habeas corpus petitions filed by state prisoners is one year. Sanders's claim in Ground 4 does not relate back to any of the claims in the timely-filed initial petition and must be dismissed unless Sanders is entitled to equitable tolling.

The Supreme Court has emphasized that "the circumstances of a case must be 'extraordinary' before equitable tolling can be applied." *Holland v. Florida*, 560 U.S. 631, 652 (2010). Equitable tolling will be applied only where a petitioner shows that he has been pursuing his rights diligently and that "some extraordinary circumstance" stood in his way and prevented timely filing of a claim. *Gray v. Staticky*, 865 F.3d 909, 912 (7th Cir. 2017). Sanders has not shown he diligently pursued his sentencing claim and has offered no explanation as to why it was omitted from his direct appeal, first post-conviction petition, or his initial habeas petition. Sanders also fails to set forth any extraordinary circumstances that prevented timely filing of his sentencing claim. Equitable tolling is not applicable, therefore, Sanders's claims in Ground Four are barred by the statute of limitations.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2).

In order for a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000). Where a petition is dismissed on procedural grounds without reaching the underlying constitutional issue, the petitioner must show both that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." (Id.)

Here, no reasonable jurist would find it debatable whether this Court's rulings on procedural default or the substantive issues were correct. Accordingly, the Court declines to issue a certificate of appealability.

## CONCLUSION

Petitioner's Amended Petition for habeas relief under 28 U.S.C. § 2254 (Doc. 65) is **DENIED**. This entire action is **DISMISSED with prejudice**. The Clerk of Court shall enter judgment accordingly.

If Sanders wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 30 days of the entry of judgment. FED. R. APP. P. 4(a)(1(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Sanders plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Sanders does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

IT IS SO ORDERED.

DATED:   February 22, 2019

_____

**NANCY J. ROSENSTENGEL**
**United States District Judge**